**Walter J. ZIMMERMAN, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 1054.**

United States District Court,
E. D. Tennessee,
Winchester Division.

Nov. 3, 1971.

Gail P. Pigg, Nashville, Tenn., for plaintiff.

John L. Bowers, Jr., U. S. Atty., and Jerry Foster, Asst. U. S. Atty., Chattanooga, Tenn., for defendant.

## MEMORANDUM OPINION

NEESE, District Judge.

This is a claim for rent of premises leased for purposes of a post office in Bell Buckle, Tennessee, under the Tucker Act. 28 U.S.C. § 1346. The action was commenced as a detainer proceeding in a state court and was removed to this Court. 28 U.S.C. §§ 1441, 1446. Trial without a jury was conducted on October 4, 1971. Final briefs were received on October 14, 1971.

The plaintiff Mr. Zimmerman and the Post Office Department entered into an agreement-to-lease these premises under date of April 5, 1968. Mr. Zimmerman agreed therein to construct a new building thereon " * * * according to Post Office Department [t]entative [d]rawing [n]o. 47–06000–03 dated November 28, 1967, and according to

[c]onstruction [r]equirements for ▉eased [p]ostal [f]acilities (POD 39B dated January, 1966). * * * " Thereunder also, Mr. Zimmerman agreed to notify the Department 45 days in advance of the date the building was to be completed. ¶ L, ch. I, of the aforementioned POD 39B provided that construction should not be started until Mr. Zimmerman had been notified by the Department that his final drawings and specifications had been approved by departmental personnel.

A dispute ensued between Mr. Zimmerman's architect and departmental personnel, and no specifications were ever approved in this manner. However, construction went forward under the aforementioned requirements; and, on January 19, 1970, Mr. Zimmerman notified postal authorities orally that the building was ready for occupancy. Mr. Albert G. Mott, then regional chief of the postal real estate branch, advised Mr. Zimmerman that deficiencies remained in the construction which could not be accepted by the Post Office Department, but that, to permit the earlier accrual of rentals, the Department would occupy the premises on February 15, 1970, with the understanding that Mr. Zimmerman would take action immediately to complete the building and fulfill his contractual obligations.

Mr. Mott testified that he advised Mr. Zimmerman that no rent on the premises would be actually paid until the building was finally accepted by the Department, but that the initial half-month and the monthly rentals would be placed in an escrow fund, pending such acceptance. Mr. Zimmerman testified that he did not understand that payment of the rentals would be withheld in this manner pending such acceptance. There were some 73 items listed by the Department at this time, which its personnel claim constituted a lack of completion of the contract by Mr. Zimmerman.

These premises were occupied by the defendant commencing on the aforementioned date. The agreed rental was $218 per month, and the defendant's

postal authorities hold accrued rentals in the aggregate of the amounts which would have been payable monthly since.

It is provided in the written agreement of the parties that:

\* \* \* If the Lessor does not replace rejected material, correct rejected workmanship, or supply omitted work, then in addition to any other remedies available to it, the Government may, by contract or otherwise, replace such workmanship, or supply such omitted work and charge the cost thereof to the successful bidder by a deduction from the rentals as they accrue.

General conditions, 7(c).

Such rejected materials and workmanship and omitted work consists of:

1. Location of a propane gas tank in a loading area;

2. Absence of an all-weather air-intake louver on an outside door;

3. Use of wire-mesh rather than plywood as a security barrier;

4. Lack of push-buttons on dutch-door lock permitting passage without a key;

5. Absence of slush-bolts and a sash on this door;

6. Defective rear-door handle;

7. Absence of safety signs;

8. Lack of asphalt paving of maneuvering area with 6″ base and 1″ to 2″ topping on premises outside improved area;

9. Absence of painted parking lanes and safety markings;

10. Omission of concrete curbing on parking lot, leading to catch-basin, except at street abuttment.

11. Defective front canopy;

12. Lack of asbestos board ceiling under canopy;

13. Defective roof flashing on canopy and seepage damage to interior of building;

14. Lack of notification of type of glass used in windows and doors;

15. Omission of a duplex electrical receptable and concealed wire on north wall of service lobby;

16. Lack of Kamelein rear mailing-vestibule doors;

17. Deficient mechanical equipment which will not accept disposable one-inch filters;

18. Omission of posting of instructions on wall next to unit as to starting, stopping and changing-over heating and cooling devices;

19. Mislocation of thermostatic control and cover;

20. Installation of undersized tack-board in workroom;

21. Installation of unspecified door signs;

22. Omission of catch-basin on west property line and the failure to remove hazardous brick-pile there;

23. Lack of specified concrete splash-block at downspout;

24. Omission to provide purchase price for, and to install, shrubbery;

25. Omission of additional halyard and cleat on flagpole;

26. Installation of latchset for locket on door to mechanical room door;

27. Failure to insulate pipes to hot-water heater;

28. Installation of undersized mirror over lavatory;

29. Omission to pain exterior galvanized and electrical mast pipings;

30. Omission of some window screens;

31. Deficient caulking of some windows and doors; and,

32. Omission to retouch with paint streaked walls and other evidences of leakage.

As to nos. 10, 16, 19, and 26, *supra*, Mr. Zimmerman stated he was under the impression that the postal contracting officer Mr. Dave W. Dogan had waived these deficiencies. Mr. Dogan testified that, in an effort to resolve the differ-

ences of the parties in the public interest, he had advised Mr. Zimmerman that these might be waived if other more basic deficiencies could be corrected seasonably, but that there was never any waiver of any of them during the negotiations of the parties. The plaintiff has not carried the burden of proving this disputed fact.

The departmental personnel estimates it would cost $6,888 for the Department, by contract or otherwise, to replace the aforementioned workmanship and supply such omitted work. It has placed in escrow $4,033 from the rentals as they accrue. The Court observes that the plaintiff can probably remedy these deficiencies at less cost than the defendant can; however, that is a matter outside the scope of this judicial function.

The lease between Mr. Zimmerman and his wife Bonnie Zimmerman and the defendant was not executed until the Fall of 1970. The plaintiff claims that, by accepting the building for occupancy in February, 1970, the defendant's personnel waived the government's rights under the agreement with Mr. Zimmerman, by accepting benefits under the contract. See 17A C.J.S. Contracts § 492(1), p. 691. This Court concludes that this rule has no application to the situation before the Court, where the parties are merely carrying-out the purport of their agreement-to-lease. Obviously, the defendant would not be justified in placing rental funds in escrow for future payment when there is compliance with agreement of the parties without having a lease signed by the plaintiff in the possession of its personnel. Contrary to the apparent understanding of the plaintiff, the defendant is not occupying the premises without rentals; it is occupying the premises and holding the rentals in escrow until there is compliance with the agreement of the parties, see: 15 Comp.Gen. 1064 (1936).

The plaintiff, for these reasons, hereby is denied relief. Rule 58, Federal Rules of Civil Procedure.